IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| Jennifer Berry Brown, | ) | |
| Plaintiff, | ) | Civil Action No. 5:21-cv-00001 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| Town of Front Royal, Virginia, | ) | By:   Joel C. Hoppe |
| Defendant. | ) | United States Magistrate Judge |

This matter is before the Court on Plaintiff Jennifer Berry Brown's ("Brown") Motion to Compel Discovery from Defendant Town of Front Royal, Virginia (the "Town"). Pl.'s Mot. to Compel, ECF No. 43. The motion has been fully briefed, ECF Nos. 46, 47, 53, 58, and is ripe for disposition. For the reasons stated below, the Court hereby GRANTS IN PART Plaintiff's Motion to Compel.

I. Background

This is a discrimination, retaliation, and harassment case arising out of the termination of Brown's employment as clerk to Defendant's Town Council. According to the Complaint, councilmember William Sealock repeatedly sexually harassed Brown beginning around January 2017 and "continu[ing] unabated into 2018 and 2019." *See* Compl. ¶¶ 14–15, 23, ECF No. 1. Brown describes a pattern of unwanted touching and inappropriate remarks by Sealock despite her repeated insistence that such actions were unwelcome. *Id.* ¶¶ 16–23.

In August 2019, after having made several complaints regarding Sealock's conduct to various employees of the Town, Brown met with Julie Bush, the Town's Director of Human Resources, regarding her complaints. *Id.* ¶¶ 20, 46. Bush informed Brown that she would hear from her within two weeks after her complaints were investigated. *Id.* ¶ 46. Brown did not hear from Bush or the Town, however, until November 2019 after she had "repeatedly sought the

1

status of the investigation" and a remedy for the harassing and retaliatory conduct she continued to face. *Id.* ¶¶ 47, 64. Following her complaints, Brown's job security was threatened and she "was subjected to a barrage of retaliatory conduct," *id.* ¶ 49, including being held to harsher standards than male staff members and being passed over for a promotion in favor of a male applicant, *see id.* ¶¶ 39–43.

On November 15, 2019—nearly three months after Brown met with Bush—Bush sent Brown a document "entitled 'Investigation Summary Report-Jennifer Berry [Brown], Clerk of Council.'" *Id.* ¶ 66. "That 'report' failed to address the many issues raised by [Brown] in her complaint, was wholly incomplete, was dismissive of [her] complaints (to the extent they were investigated at all) and was indicative of a sham investigation." *Id.* Brown went on medical leave in December 2019. *Id.* ¶ 67. On January 30, 2020, after Brown returned from her leave, she was informed via email and text message that her position with the Town would be terminated effective February 4, 2020. *Id.* ¶ 69. The messages indicated that Brown's "job was subject to 'right sizing,' that her Clerk position was to be abolished[,] and that the Clerk position was to be a part-time position." *Id.* Brown asserts that the Town's purported financial reasons for her termination were pretext for sex-based discrimination and retaliation. *Id.* ¶ 71. On April 1, 2020, Brown filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 9. On January 4, 2021, Brown filed her Complaint in this action asserting violations of the Family and Medical Leave Act ("FMLA") and Title VII of the Civil Rights Act of 1964. Specifically, Brown asserts claims for sex-based discrimination, unlawful retaliation, retaliatory hostile work environment, and violations of the FMLA. *Id.* ¶¶ 74–113.

## II. Brown's Motion to Compel

In November 2021, Brown filed the instant motion to compel. ECF No. 43. In her brief in support, Brown asserts that after she complained about harassment to Bush in August 2019, Defendant hired attorney Julie Judkins, who is counsel of record to the Town in this matter, *see* ECF No. 6, "to make sure that everything in the investigation, and later in the firing of [Brown], was done to insure it was legal." Pl.'s Br. 2–3, ECF No. 46. In the instant motion, Brown seeks "information and documents underlying Ms. Judkins'[s] involvement in both the investigation of [Brown's] harassment and retaliation complaints and in the termination of [Brown's] employment." *Id.* at 17.

During discovery in this matter, Brown's counsel sought to obtain information about Ms. Judkins's role in both the investigation of Brown's complaints and Brown's termination through the deposition of Matthew Tederick, the Town's Rule 30(b)(6) designee.[1] When Brown's counsel asked why the Town hired Ms. Judkins in August 2019, Tederick responded that Ms. Judkins's role was "to advise Town council as it relates to a complaint that was made by [Brown]," and he said that Ms. Judkins served in that capacity until Brown filed her EEOC complaint. Tederick Dep. Tr. (Oct. 7, 2021), ECF No. 46-1, at 29. Brown's attorney also asked if "Ms. Judkins advise[d] the Town how to end [Brown's] employment with the Town," but the Town's lead counsel of record, Heather Bardot, objected claiming that such information was privileged and instructed Tederick not to answer the question. *Id.*

Tederick further testified that he "wanted an investigation" into Brown's complaints against Sealock "and [he] wanted it to be fair. [He] retained outside counsel eventually to make sure it was done per the law," *id.* at 32, and he said that, "on advice of counsel," he sent Brown a

---

[1] Rule 30(b)(6) of the Federal Rules of Civil Procedure provides, in pertinent part, that where a party seeks to depose an organization, "[t]he named organization must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf . . ." Fed. R. Civ. P. 30(b)(6).

letter on October 2, 2019, relating to her employment status, *id.* at 30–31. Tederick also represented that the investigation into Brown's complaints was "conducted by HR and counsel," *id.* at 36, and that "if legal counsel and the HR department had concluded that there was sexual harassment or retaliation or a hostile work environment," he "without a doubt, . . . would have encouraged Council to take all the appropriate action afforded to us by the law," *id.* at 37. Brown's counsel also asked whether, accepting Brown's allegations regarding Sealock's conduct as true, such allegations would be sexual harassment under the Town's policy. *Id.* at 34. Ms. Bardot objected to the question's form and noted that it "calls for a legal conclusion," but instructed Tederick to answer subject to those objections. *Id.* Tederick responded as follows:

> Again, that would be up to the investigative body. In this case, it was the HR Director, in conjunction with legal counsel, to draw that legal conclusion of whether that was harassment or not. I can't - - I don't know that I'm in a position to specifically state that would have legally violated the Town HR policy. I'd have to leave that up to legal counsel.

*Id.* at 35. Throughout his Rule 30(b)(6) deposition, Tederick reiterated his position that whether certain alleged conduct by Sealock constituted harassment under the Town's policies would be up to HR and legal counsel. Pl.'s Br. 7–8. He later testified that the Town had retained a firm specializing in employment matters because he "wanted an outside set of eyes, an expert in personnel matters to offer legal advice and counsel in the event it was needed," Tederick Dep. Tr., ECF No. 46-1, at 43, and that "Ms. Judkins was retained very early in this process . . . to ensure that we were following employment law and the Personnel Policy, and so she was retained to offer advice to Council," *id.* at 52. When Tederick was asked whether he had "receive[d] advice of counsel telling [him] how to avoid problems with [Brown's] recent filing of the sexual harassment complaint," Ms. Bardot again objected on grounds of attorney-client privilege and instructed Tederick not to answer. *Id.* at 50. Later in the deposition, Ms. Bardot

asserted attorney-client privilege when Brown's counsel asked Tederick if Ms. Judkins had

"recommend[ed] [Brown] be included in a reduction of force as a means of getting rid of her."

*Id.* at 53.

Brown also deposed Town Council member Letasha Thompson. Pl.'s Br. 9. Several

months after Brown complained of harassment to Bush, she emailed Thompson expressing her

frustration with the handling of her complaints on December 17, 2019. Email from J. Berry to L.

Thompson (Dec. 17, 2019), ECF No. 46-1, at 21–22. Thompson responded the following day,

stating that the Town had worked in conjunction with HR and that Bush had "sought outside help

on the issue as well." Email from L. Thompson to J. Berry (Dec. 18, 2019), ECF No. 46-1, at 21.

At her deposition, Thompson identified Ms. Judkins as the "outside help" to whom she was

referring in the email. Thompson Dep. Tr. (Sept. 28, 2021), ECF No. 46-1, at 56 ("I think we

were mostly relying on [Ms. Judkins] at some point and that's why Ms. Bush couldn't move

forward without talking -- you know, working with her."). Thompson also described that Council

members, including herself, were given the opportunity to ask Ms. Judkins and Tederick

questions about Tederick's proposal to eliminate certain positions as a cost-saving measure. *Id.*

at 57–59. When Brown's counsel asked what questions Thompson had for Ms. Judkins,

however, Ms. Bardot instructed Thompson not to answer, asserting attorney-client privilege. *Id.*

at 70, 72–73. Ms. Bardot again objected when Brown's counsel asked Thompson if Ms. Judkins

said anything about "how to structure the termination of [Brown's] employment." *Id.* at 71.

In her motion to compel, Brown challenges the Town's assertions of attorney-client

privilege and "seeks the reconvening of the depositions of the Town [], through Mr. Tederick,

and Ms. Thompson," so that Brown's attorney can engage in a full inquiry into written and oral

communications with Ms. Judkins concerning her "involvement in the subject matter of the

investigation of [Brown's] complaints of harassment and retaliation." Pl.'s Br. 17. Brown also asserts that she "should receive all documents regarding communications between and among the Town and Ms. Judkins relating to these issues, including Ms. Judkins'[s] files on the investigation and the termination of [Brown's] employment." *Id.*

According to Brown, the Town has waived attorney-client privilege regarding these communications "[b]ecause Ms. Judkins was conducting the investigation along with the HR department, and because the Town has taken affirmative steps which placed Ms. Judkins'[s] advice at issue in this case." *Id.* (internal citations omitted). In its response, the Town counters that it has not waived attorney-client privilege with respect to these communications because it "has not raised reliance on advice of counsel as an affirmative defense," and merely retaining counsel for multiple employment issues "does not constitute waiver of the privilege." Def.'s Br. 2, ECF No. 47.

### III. The Legal Framework

"The attorney-client privilege has long been recognized as warranting special protection in order 'to encourage full and frank communications between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice.'" *Billings v. Stonewall Jackson Hosp.*, 635 F. Supp. 2d 442, 444 (W.D. Va. 2009)(quoting *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). "The predominant purpose of attorney-client privilege is to afford 'all communication between attorney and client absolute and complete protection from disclosure.'" *Id.* (quoting *In re Allen*, 106 F.3d 582, 600 (4th Cir. 1997)). The privilege applies when the following factors are satisfied:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and

(4) the privilege has been (a) claimed and (b) not waived by the client.

*United States v. Tedder*, 801 F.2d 1437, 1442 (4th Cir. 1986). "The burden is on the proponent of the attorney-client privilege to demonstrate its applicability." *In re Grand Jury Subpoena*, 415 F.3d 333, 338–39 (4th Cir. 2005).

## IV. Discussion

The Town has asserted that the information Brown sought in the depositions of Tederick and Thompson is protected by the attorney-client privilege. Brown argues that the Town waived the privilege by putting the particular communications "at issue." *See generally* Pl.'s Br. 11–19. Specifically, Brown contends that the Town put Ms. Judkins's communications at issue by hiring her to investigate the circumstances of Brown's internal complaints, relying on her conclusions as to the investigation, and relying on her advice in the decision to terminate Brown and "right-size" the Clerk of Council position. Brown further contends that the Town waived the privilege "[b]ecause [it] voluntarily disclosed portions of the advice it received from Ms. Judkins, and . . . has relied upon Ms. Judkins'[s] involvement as its attorney to bolster the denials it has asserted in this case." *Id.* at 14. She argues that the Town's "offensive use of Ms. Judkins involvement in the investigation and the termination, including in the effort to show how fair and legal the Town's actions were" constituted an affirmative step that waived the attorney-client privilege with respect to these communications. *Id.* at 15. The Town argues that it has not asserted advice

of counsel as an affirmative defense and has not voluntarily disclosed the communications with its counsel. *See generally* Def.'s Br. 2–6. Thus, in its view, the attorney-client privilege remains intact. The Court finds that the Town has put Ms. Judkins's involvement in the investigation of Brown's internal complaints "at issue," but it has not put "at issue" her advice regarding Brown's termination. Thus, the motion to compel will be granted in part.

The attorney-client privilege is not absolute; "[a] client can waive the attorney-client privilege expressly or through his own conduct." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 294 (4th Cir. 2004). The following framework is useful in assessing whether an attorney-client communication has been placed at issue, thereby waiving the privilege:

> (a) the assertion of privilege was the result of some affirmative act, such as filing suit, by the asserting party;
>
> (b) through this act, the asserting party put the protected information at issue by making it relevant to the case; and
>
> (c) application of the privilege would have denied the opposing party access to information vital to his [case].

*Botkin v. Donegal Mut. Ins. Co.*, No. 5:10cv77, 2011 WL 2447939, at *4 (W.D. Va. June 15, 2011)(citing *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975)). A defendant can take such an affirmative act by either pleading reliance on advice of counsel as an affirmative defense or by making it an element of its defense. *Id.* at *6 (citing *Rhone-Poulenc Rorer v. Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)).

Brown asserts that the Town waived the attorney-client privilege for communications it had with Ms. Judkins regarding Brown's termination by "voluntarily disclos[ing] portions of the advice it received from Ms. Judkins." Pl.'s Br. 14. She cites to the Town's EEOC Position Statement in support of this contention, noting that the Town represented therein that "Mr. Tederick obtained legal counsel specializing in employment law for the Town Council and him

8

prior to any employment action being recommended or taken to ensure that all employment actions taken were legal and proper." *Id.* The Town's statement to the EEOC, however, did not disclose the contents of its attorney's advice. *See* Resp.'s Position Statement (July 17, 2020), ECF No. 46-1, at 7–20. Rather, the Town advised that it had retained counsel to ensure that it acted within the law. *Id.* at 12. Such a statement does not waive the attorney-client privilege. *Billings*, 635 F. Supp. 2d at 445–46 (finding that lawyer's letter to EEOC that did not "hint[] at the substance of the communications between" the lawyer and his client did not waive the attorney-client privilege); *see also In re Fluor Intercontinental, Inc.*, 803 F. App'x 697, 702 (4th Cir. 2020) ("[T]o find waiver, a court must conclude that there has been disclosure of *protected communications*.").

Additionally, the Town's statement to the EEOC did not put advice of counsel "at issue" as to Brown's termination. *See Moore v. DAN Holdings, Inc.*, No. 1:12cv503, 2013 WL 1833557, at *5 (M.D.N.C. Apr. 30, 2013) (finding that defendant's testimony that it "hired legal counsel to give me legal advice" did not put reliance on counsel at issue where defendant disclaimed intent to rely on counsel's advice as a defense). The Town has not asserted reliance on the advice of counsel as an affirmative defense. Although it has asserted a general affirmative defense, Answer ¶ 116, ECF No. 7, reserving any affirmative defenses developed during discovery or at trial, this is not an assertion of reliance on the advice of counsel. *Sayre Enters. v. Allstate Ins. Co.*, No. 5:06cv36, 2006 U.S. Dist. LEXIS 89097, at *12–13 (W.D. Va. Dec. 8, 2006) ("Such a general pleading is insufficient to set forth a cognizable advice of counsel defense and insufficient even to inject a new factual defense." (internal quotation marks omitted)). Moreover, although Tederick testified at his Rule 30(b)(6) deposition that Ms. Judkins drafted the severance documents for Brown, Tederick Dep. Tr., ECF No. 46-1, at 49, Tederick

9

did not testify that Ms. Judkins made the decision to terminate Brown. Accordingly, I do not find that the Town has put at issue or otherwise waived the attorney-client privilege as to communications with Ms. Judkins regarding Brown's termination.

The analysis is different, however, for Ms. Judkins's communications with the Town regarding the investigation of Brown's complaints of harassment and her claim of hostile work environment. *See* Compl. ¶¶ 93–99. A successful hostile work environment claim under Title VII requires establishing: "(1) unwelcome conduct; (2) that is based on the plaintiff's sex; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer." *Okoli v. Baltimore*, 648 F.3d 216, 220 (4th Cir. 2011) (cleaned up). In such a claim, where the "harassing employee is the victim's co-worker, the employer is liable only if it was negligent in controlling working conditions." *Boyer-Liberto v. Fountainbleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015) (quoting *Vance v. Ball St. Univ.*, 570 U.S. 421, 424 (2003)) (cleaned up). An employer may be "negligent in controlling working conditions," *id.*, "if it knew or should have known about the harassment and failed to take effective action to stop it," *Ocheltree v. Scallon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003) (en banc). Put another way, successfully asserting a Title VII hostile work environment claim requires establishing both that the employer was, or should have been, aware of the conduct rendering the environment hostile, and that it failed to take reasonable remedial action. *See Ocheltree*, 335 F.3d at 333–34. Furthermore, "[i]n the harassment context, the reasonableness of remedial measures represents a key issue in determining liability." *Moore*, 2013 WL 1833557, at *3; *see also Pray v. N.Y.C. Ballet Co.*, No. 96cv5723, 1998 WL 558796, at *2 (S.D.N.Y. Feb. 13, 1998) ("Once an employer is made aware that its employees are being subject to sexual harassment, it is under an obligation to take reasonable steps to remedy it, and

whether the employer's responsibility for remediation has been fulfilled is determined by the facts in each case.").

In her complaint, Brown asserts a claim against the Town for retaliatory hostile work environment, based largely on the conduct of another employee—William Sealock. The Town's awareness of Brown's complaints about Sealock's alleged harassment and Ms. Judkins's investigation and the conclusions drawn therefrom, are part and parcel to the reasonableness of the Town's response to Brown's hostile work environment claim.

This principle is illustrated by *Chivers v. Central Noble Community Schools*, No. 1:04cv394, 2005 WL 6567356 (N.D. Ind. Aug. 4, 2005). In *Chivers*, the plaintiffs, a father and daughter, brought claims against the daughter's school for discrimination and sexual harassment under Title IX. Defendant had hired an attorney to investigate plaintiffs' claims and develop remedial action. *Id.* at *1. Plaintiffs sought to depose the attorney who conducted the investigation, and defendants objected and filed a motion to quash, citing attorney-client and work product privileges. *Id.* The court granted the motion in part, limiting the scope of the deposition. The court discussed the testimony of the school's superintendent, noting that he acknowledged that the attorney had investigated plaintiffs' complaints and the superintendent had relied on the attorney's conclusions in determining whether the alleged conduct violated the school's policy against sexual harassment. *Id.* at *3. Assessing this testimony, the court found that the superintendent "essentially turned the investigation of [plaintiffs'] charges over to [the attorney], and it was counsel who assembled the facts, drew the conclusions, and constructed the remedial response." *Id.* at *4. Under those circumstances, to "prevent Plaintiffs from discovering what was done by counsel and why, would be tantamount to giving [defendants] both the 'sword' (i.e., the argument that 'we were reasonable because we had our attorneys investigate the

11

charge and craft a response') and the 'shield' (i.e., 'what our attorneys did and why they did it, is privileged')." *Id.* Considering the elements of a Title IX claim for harassment, the court found that the information sought by the plaintiffs was "likely to speak directly to whether [the defendants] had actual knowledge of all the circumstances surrounding the allegations and whether their response to such allegations was 'clearly unreasonable.'" *Id.* Accordingly, the court permitted plaintiffs to depose defendants' investigating attorney, "limited to inquiring about his knowledge concerning the investigation and actions taken by [the defendant] in response to" plaintiffs' allegations. *Id.* at *5.

Brown's case is analogous to *Chivers*. Brown complained to the Town of Sealock's sexual harassment. According to Tederick's testimony, the Town hired Ms. Judkins to investigate Brown's complaints and to make sure the investigation was "done per the law." Tederick Dep. Tr., ECF No. 46-1, at 32. The Town relied on Ms. Judkins and the "HR department" to determine whether the investigation showed "that there was sexual harassment or retaliation or a hostile work environment," *id.* at 37; *see also id.* at 35 (relying on "the HR Director, in conjunction with legal counsel, to draw the legal conclusion of whether that was harassment or not."). As in *Chivers*, the Town relied on its counsel to investigate Brown's claims of harassment, develop conclusions about the investigation, and determine the necessity of remedial actions. Ms. Judkins's communications on those points with the Town bear directly on the Town's knowledge of Brown's allegations of harassment and the reasonableness of its response. *See Pray*, 1998 WL 558796, at *2. By relying on Ms. Judkins to assist with the investigation and advise about what remedial measures were necessary, if any, the Town has put its communications with her "at issue" in this case. *See Doe 1 v. Baylor Univ.*, 335 F.R.D. 476, 493–99 (W.D. Tex. 2020) (finding defendant put attorney's communications at issue by relying

on attorney to investigate complaints and recommend remedial measures). Accordingly, I find that Defendant has waived the attorney-client privilege as to communications with Ms. Judkins regarding the investigation of Brown's complaints of harassment, Ms. Judkins's conclusions about the investigation, and her advice about any remedial measures to address the alleged harassment.

V. Conclusion

For the foregoing reasons, Brown's motion to compel, ECF No. 43, is GRANTED IN PART. The Court finds that Ms. Judkins's advice regarding Brown's termination is protected by the attorney-client privilege. On the other hand, Defendant has put at issue Ms. Judkins's communications regarding the investigation of Brown's complaints of harassment and her conclusions from that investigation; thus, Defendant's assertion of the attorney-client privilege for those communications is deemed waived. Accordingly, Defendant is DIRECTED to disclose its communications with Ms. Judkins regarding the investigation of Brown's complaints of harassment, her conclusions from the investigation, and her advice about any remedial measures taken in response to the alleged harassment.

It is so ORDERED.

The Clerk shall send a copy of this Order to the parties.

ENTER: March 31, 2022

Joel C. Hoppe
U.S. Magistrate Judge