**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION**

JENNIFER BERRY BROWN,       )
                                      )
       Plaintiff,         )
                                      )     Case No.: 5:21cv00001
v.                                )
                                      )
TOWN OF FRONT ROYAL, VIRGINIA,   )
                                      )
       Defendant.     )

**DEFENDANT'S REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

COMES NOW defendant, Town of Front Royal, Virginia (sometimes hereafter "the Town"), by counsel, and for its Reply to Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment states, as follows:

## I. RESPONSE TO PLAINTIFF'S PURPORTED STATEMENTS OF ADDITIONAL MATERIAL FACTS[1]

In her Opposition to the Town's Memorandum in Support of Motion for Summary Judgment, Plaintiff, Jennifer Berry Brown ("Berry"),[2] begins by setting forth 15-pages of purported statements of additional material facts ("Berry SOFs").[3] While the Town does not contest some of the facts Berry has outlined, many of the purported facts are not facts at all, not supported by the record, disputed or untrue. The Town therefore addresses each Berry SOF which falls within one of these categories, as follows:

---

[1] The majority of the purported "Statements of Additional Material Facts" are not material at all to the issues raised by the Town's Motion for Summary Judgment.
[2] While the Town would normally refer to plaintiff as "Brown" given her name change, she is being referred to as "Berry" herein to be consistent with the briefing by plaintiff.
[3] "Berry SOF" and "Berry SOFs" pertains to Berry's Statements of Additional Material Facts, as outlined on pages 2 through 17 of ECF No. 93.

**SOF A:**     Although it is accurate that William Sealock ("Sealock") and Eugene Tewalt ("Tewalt"), among others, voted in 2017 to approve the budget which included funding to move Berry from a part-time position with Council to a full-time position, Tewalt and other Councilmembers were unaware/missed that line item in the budget and did not realize by approving the budget that Berry was going to become a full-time employee of the Town. *See* ECF No. 75, p. 3, ¶ 12.

There is no support for Berry's contention that she was "misclassified as an exempt employee" or that she was erroneously told that she was exempt. These are completely fabricated assertions not supported by the record. Not only does her job description [ECF No. 75-11] expressly identify her as an exempt employee, but the July 28, 2017 offer letter [ECF No. 75-10], which Berry signed and expressly accepted, also provides that the position of full-time Clerk of Council was an exempt position. Further, to the extent Berry contends that she was not "required to" work overtime, she mischaracterizes the record. As Matthew Tederick ("Tederick") explained in his deposition, Berry was an exempt employee and while not ***required*** to work overtime, exempt employees frequently work more than 40 hours a week to get their jobs done, which is expected. ECF No. 80-3, Tederick Dep. 75:1-24; ECF No. 77-6, Berry Dep. 117:10-119:3.

With respect to Berry's contention that Tina Stevens is the Town's purported VRSA HR consultant, the record does not support this contention. As for Ms. Stevens' "opinion" that Berry was non-exempt and should be paid overtime, the court may not consider this because it is hearsay, lacks foundation, and is a legal opinion for which Ms. Stevens has neither been designated to testify nor is qualified to render. See *Salamon v. E. Carolina Univ.*, No. 4:04-CV-20-BR(3), 2007 U.S. Dist. LEXIS 112659, fn. 5 (E.D.N.C. Mar. 20, 2007) ("The court cannot rely upon speculation, hearsay, legal conclusions or unsubstantiated opinion in resolving a motion

for  summary judgment." (citing *Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 62 (4th Cir. 1995) (unsupported speculation insufficient to defeat summary judgment).

To the extent that Berry claims that Napier provided her with information which contradicted the Town's position regarding who Berry's HR representative was, Napier was a co-worker of Berry and was neither authorized to speak on behalf of the Town on this issue, nor was he doing so when informally communicating with Berry.

As for the claim that the "Town withheld from Berry VRSA's opinion on her non-exempt status," there is no evidence that this was or was not shared with Berry, it is an opinion which lacks a foundation, and it is immaterial to the issues in this case.

**SOF C:**      The comment that the record is "replete" with incidents of Sealock's purported inappropriate behavior toward Berry is first of all an opinion, which the court may not consider. Secondly, the record demonstrates a total lack of identification of incidents of Sealock's purported inappropriate behavior toward Berry. As set forth in the Town's Memorandum in Support of Motion for Summary Judgment [ECF No. 75], Berry provides few facts to support her claims as it pertains to any inappropriate behavior by Sealock or complaint of the same to him, and Sealock steadfastly denies Berry's allegations. *Id.*, see in particular, Listed Statement of Undisputed Facts, ¶¶ 13, 14, 16-18. See also, Ex. 1, Sealock Dep. (8/31/21) 312:22-314:14; Ex. 2, Sealock Dep. (7/13/21) 77:15-81:7; 84:1-85:13; 92:5-93:1; 208:21-209:4. The facts which Berry does identify (which are contested) to support any claims arising out of the alleged behavior of Sealock (or anyone else) are insufficient to state claims as detailed in the Town's Memorandum in Support of Motion for Summary Judgment.

**SOF D:**      These allegations are hotly disputed. Ex. 1, Sealock Dep. (8/31/21) 312:22-314:14. Ex. 2, Sealock Dep. (7/13/21) 77:15-81:7; 84:1-85:13; 92:5-93:1; 208:21-209:4. However,

even assuming what Berry claims to be true, she has not stated a viable claim for reasons detailed in the Town's Memorandum in Support of Motion for Summary Judgment [ECF No. 75].

**SOF E:**     To the extent that Berry relies on testimony from Bush or Holloway to support her claim that Sealock asked Berry the going rate for a blow job on three occasions, it is unsubstantiated hearsay which the court may not consider. See *Salamon, supra*. Berry is the ***only*** one who says that this ever occurred, and Sealock denies it. Ex. 2, Sealock Dep. (7/13/21) 159:8-161:12, 254:2-16.

With regard to the meme, Sealock did not repeatedly testify that Hollis Tharpe ("Tharpe") told him "exactly what the meme showed." Ex. 2, Sealock Dep. (7/13/21) 153:5-154:23. Sealock also denies laughing at the meme, which he never saw. *Id.* Although Berry contends she showed the meme to Tewalt, he denies it. See ECF No. 90, p. 5-6, ¶ 6. To the extent that Berry suggests a reasonable inference to the contrary may be drawn, that is not the court's role on summary judgment.

Berry's characterization of Sealock referring to the meme as a "joke" or "cartoon" is a mischaracterization of his testimony. The quoted sections from his deposition make clear that he is trying to describe that which he hasn't seen and Berry's description of the same: "this so-called cartoon or joke or memes or whatever she calls it about a blow job." See ECF No. 90, p. 6, ¶ 9.

Thompson's testimony, cited by Berry, does not make clear that whatever she saw on Facebook is the same meme which Berry showed to Council, failed to preserve and cannot describe in any detail.

The sentences within this paragraph which start on page 4 with the final sentence and continue to the end of the paragraph are largely argumentative and not factual in nature. Sealock (and the Town), as discussed *ad nauseum* in the Town's Memorandum in Support of Summary Judgment [ECF No. 75] and above, dispute that Sealock sexually harassed Berry or treated her in a manner which was inappropriate. Sealock has ***always*** denied making the statement which Berry has attributed to him; i.e.

asking her the "going rate for a blow job." See response to **SOF E**, above. As for the comments that Sealock suggested falsely that Berry was forgetful and may have used Tharpe's words against him because Berry felt threatened, the document relied upon is unsubstantiated by Sealock and the statements derived therefrom are inadmissible hearsay which the court may not consider. See *Salamon, supra*. Additionally, to the extent that Berry cites Sealock's testimony regarding how he felt about what a golfer said to him and how he thinks it might make someone else feel, his opinions in this regard are not facts. Further, his opinion as to whether what the golfer said to him might "violate something" are meaningless and inadmissible.

> **SOF F:**     Sealock denies referring to Berry as a "receptionist" or "secretary." Ex. 2, Sealock Dep. (7/13/21) 92:5-10. To the extent that Berry contends that Sealock admitted to Thompson that he had referred to Berry as a receptionist, that is not true and it is inadmissible hearsay, in any event. Ex. 3, Thompson Dep. 228:21-229:18. Thompson never heard Sealock call Berry a receptionist. *Id.*

To the extent that Berry claims that Sealock did refer to her as a secretary or receptionist and characterizes them as "gender hostility," Berry's characterization is not entitled to any consideration. This is an issue of law and requires consideration of context and the totality of the circumstances. The same is true as it relates to Berry's contention that describing her as having an "explosion" somehow amounts to gender hostility.

While Sealock did not see Berry's personnel file, there is no evidence any Councilmember (all of whom were involved in evaluating Berry) ever saw her personnel file or asked to see it. To the extent that Berry claims that Sealock had nothing to do with providing Berry her job description, it is difficult to understand the point of raising this. However, as the record amply demonstrates, Berry was employed and in her position of Clerk of Council long before Sealock

was elected to Council, and Berry's job duties were unchanged during the time Sealock was on Council. ECF No. 77-6, Berry Dep. 93:14-21.

With regard to "posting of time," that was a Council decision, not a decision made by Sealock. ECF No. 77-9, Gillispie Dep. 31:13-22. Berry reacted to being asked to post time by getting loud with her supervisors, Sealock and Tharpe. ECF 93-12, Tharpe Dep. 19:3-7.

To the extent that Berry characterizes the "car show" incident that Thompson testified to as an act of gender hostility toward Thompson, Berry's characterization is entitled to no weight or consideration for the reasons outlined at the outset of this section. Further, Berry – as she often does – parses out from the record incomplete testimony regarding events which took place and twists them to present a false narrative. As Thompson testified, Sealock was upset by a position which Thompson, a Councilmember like him, took regarding an issue involving local government. He saw her at a car show, grabbed her elbow, and pulled her aside to discuss the matter. She found it to be aggressive, but not sexual or directed at her because of her gender. Ex. 3, Thompson Dep. 93:23-94:19; 233:11-234:14. In fact, Thompson testified that she never saw Sealock touch someone in a manner she deemed to be inappropriate. *Id.*, 231:6-10. Further, Thompson testified that Sealock "touches everybody. It's equal opportunity touching…. It's usually like a clap on the shoulder or a pat on the back….I've seen him put, like, his hands here and I've seen him put his hands like that on males and females. Not like massaging but, Hey, buddy, how are you doing." *Id.*, 188:17-189:6. What Thompson was describing is that Sealock would walk behind men and women alike and greet them by placing a hand or hands on their shoulders. *Id.*, 189:9-190:1.

**SOF G:**     Sealock did not threaten Berry's job on May 13, 2019, did not make the other comments attributed to him in this SOF, and did not falsely convey what Tharpe had told to him. See ECF No. 75, p. 4, ¶ 15. Ex. 2, Sealock Dep. (7/13/21) 156:22-158:10. As far as Berry's

latest characterization of what the meme depicts, she has no recollection of the content of the meme and failed to preserve it. ECF No. 90, p. 6, ¶ 8.

Berry's complaint to Napier regarding the May 13, 2019 conversation with Sealock is as captured in ECF Nos. 76-4 and 76-5. There was no claim by Berry that she felt that Sealock had threatened her in any way. To the extent that Berry contends that Holloway testified that she had told him that Sealock threatened her job on May 13, 2019 or otherwise, that is false and the cited section from Holloway's deposition in no way supports Berry's position.

To the extent that Berry claims that Tharpe denies having threatened Berry's job and, as such, "there is a reasonable inference that Sealock was communicating a false threat" no such inference arises. It is just as likely (or more likely) that Tharpe is not telling the truth about what he said. This is made evident by the fact that he somehow knew that he had been accused of making the statement, but cannot explain how he came to know about it. Ex. 4, Tharpe Dep. 44:12-46:13.

With regard to the assertion that the conversation between Sealock and Tharpe was taped on Tharpe's telephone, it is unclear what portion of the conversation may have been taped. ECF No. 93-12, Tharpe Dep. 31:2-7. When Tharpe stepped down in April of 2019, he returned his town issued phone, and there was no reason for the Town to preserve the content for purposes of this litigation as Berry had raised no issues as they pertain to Sealock or otherwise. *Id.*, 31:8-19.

Sealock did not communicate to the Town that there needed to be a penalty for Berry's accusations. ECF No. 90, pp. 15-16, ¶ 41.

Berry's description of what transpired between her and Holloway on August 16, 2019 is disputed. Ex. 5, Holloway Dep. 129:19-23; Holloway Dep. Ex. 3. Berry never advised the Town that she would not identify Holloway as the Councilmember who purportedly threatened her because she feared it would lead to termination. By the time Berry sent her October 16, 2019 email

to Bush, ECF No. 93-1, Berry Dep Ex. 69, the Town had already figured out she was likely referring to Holloway. Ex. 6, Tederick Dep. 198:3-199:23. The Town disputes Berry's suggestion that Holloway's statement was false, as opposed to hers being false. To the extent that Bush did not think Berry's credibility was undermined by Holloway's disagreement over what happened at the meeting between them, it is an irrelevant and immaterial personal opinion.

As for Berry's characterization of Tederick's communications related to the Holloway-Berry meeting, they warrant no consideration. To say that one "improperly inserted personal feelings and put his own spin on the situation are not factual averments and are contested. Further, Berry again misrepresents the record by suggesting that Holloway told Tederick that Berry complained about Sealock's blow job comments and that Tederick then omitted reference to that part of the conversation when recounting what Holloway conveyed to him about his discussion with Berry. Ex. 5, Holloway Dep. 118:19-119:13. The fact is that Holloway, two years after speaking with Berry, cannot recall exactly what he told Tederick about his conversation with Berry. *Id.* In contrast, Tederick documented the conversation he had with Holloway within days of the conversation having occurred. Finally, in her ongoing mischaracterization of the record, Berry suggests that the Town, in its Answer, characterized Berry's conversation with Holloway, where she complained about Sealock's alleged sexual harassment as, "not a notable event." This is false. In her Complaint, at paragraph 43, Berry asserted, in part: "A meeting with an employee outside was an uncommon occurrence, so Plaintiff leaving with Mr. Holloway was notable to any employee in the area." The Town denied that Berry walking outside with Holloway was a notable event, as Berry asserted.

Berry's assertion that Tederick, Sealock and Napier were discussing getting rid of her on August 19, 2019 is false. It is also based on hearsay which has been refuted/denied by everyone

8

who was allegedly involved. Ex. 6, Tederick Dep. 143:20-145:4; Ex. 9, Napier Dep. 32:16-24; Ex. 8, Cameron Dep. 42:3-43:11. Berry claims that Brandi Cameron ("Cameron") told her about the Tederick, Sealock and Napier discussion. Ex. 7, Berry Dep. 269:4-270:17. Cameron has flat denied hearing such a discussion or relaying information to Berry regarding anyone discussing getting rid of Berry. Ex. 8, Cameron Dep. 42:3-43:11.

Tederick did not go to Napier to question who had revealed to Berry that she was "on the chopping block." Napier's email raises the question of why Berry thought she was on the chopping block. The emails do not make it clear that Berry had been advised about a threat to her job. Rather, the emails make it clear that Berry – for a variety of reasons – was paranoid that there was going to be a closed session to discuss personnel (which she assumed was her) on August 19, 2019.

Berry's claim that Holloway threatened Berry's job and Tederick knew it are disputed, as set forth above.

Finally, Berry blatantly misrepresents that the email string, Ex. 7 to Bush's deposition, was not produced by the Town during discovery. It clearly was, as is evidenced by the Batestamp at the bottom, "TOWN2810-2811."

**SOF H:**     (1)     It is baffling to say the least, how Berry represents that the draft Composite Sheet, which did not contain input by two Councilmembers, who needed to weigh in, establishes that Council had decided to give Berry a 2.5% merit increase. The citation to Gillispie's deposition also refutes that assertion. Specifically, he was asked, "Do you know as of the date this document was created whether a final decision had been made as to what her merit increase would be?" His answer was, "no." Ex. 10, Gillispie Dep. 81-4, 81:19-83:7.

To the extent that Berry maintains that Sealock took on the responsibility for her evaluation despite knowing that she had objected to his harassing behavior, it is disputed that Sealock harassed

Berry or that she complained to him about having done so. Ex. 1, Sealock Dep. (8/31/21) 312:22-314:14; Ex. 2, Sealock Dep. (7/13/21) 77:15-81:7; 84:1-85:13; 92:5-93:1; 208:21-209:4. Although Berry claims that the "harassment got worse" during the whole "evaluation process," she fails to back this with any facts. In fact, she has previously testified that the harassment stopped after August 15, 2019. ECF No. 75, p. 7, ¶ 25.

(2)     The Town has exhaustively disputed Berry's meritless claim as it relates to her not being offered the PIO position. Rather than responding to each statement in this SOF again, the Town incorporates the disputed facts and arguments set forth in its Opposition to Plaintiff's Motion for Partial Summary Judgment. ECF No. 90.

**SOF I:**     Removal from Council's table is – as a matter of law - not an alteration of Berry's job duties. She never complained to Tederick about being moved, nor did she complain to anyone that she had difficulty doing her job by sitting back from the table. ECF No. 93-1, Berry Dep. 365:5-366:12. Town employees under Council's auspices were frequently moved from Council table at the discretion of the presiding Mayor. ECF No. 75, p. 8, ¶ 28. This included the male employees who Berry contends were treated differently than her. *Id.* There is no evidence that Tina Presley ("Presley) has been sitting at Council table since Berry was terminated, but only evidence that under the current mayor she sometimes sits at Council table.

Berry was not excluded from closed sessions at the request of Sealock. See ECF No. 75, p, 8, ¶ 29. Tewalt, who became Mayor in November 2019, made this recommendation, and Council agreed. *Id.* The recommendation had nothing to do with Berry's complaint as it relates to Sealock. *Id.* Regarding the repeated comment that Sealock insisted that there had to be a penalty, that has been addressed above in response to **SOF G**. This is the first time Berry has suggested that being excluded from closed session had a "materially adverse effect on her employment." That is a

10

conclusion without citation to or a basis in fact. Berry has provided no factual basis to support the contention that her "job duty to communicate with members of Council was also altered by Sealock's refusal to speak with her."

       **SOF J:**       At the outset, the Town submits that the assertions within this SOF are not material or relevant because Berry was not terminated because of performance issues. She was terminated as part of a legitimate reduction in force. That being said, there is no evidence in the record which supports Berry's claim that Sealock provided false input during Berry's evaluation process. Berry's inconsistent work hours and failure to post hours had been a concern of Council as a whole long before she filed a complaint against Sealock in August 2019. See ECF No. 90, pp. 4-5, ¶ 2. Council had the authority to require Berry to work in the office, rather than from home as she had in the past under different leadership. See ECF No. 75-1, p. 5, Chapter III, § 12, p. 6, Chapter V, § 17. Berry did not agree to a schedule during her evaluation and she did not abide by Council's request that she be in the office 40 hours a week. Ex. 6, Tederick Dep. 80:22-82:6. She also did not agree to post her hours as she had been asked to do. *Id*., 83:18-24.

       With regard to the assertion that Julia Judkins ("Judkins") was retained to assist with the investigation, that is a mischaracterization. Judkins provided legal advice during the Town's investigation, but did not conduct any part of the investigation for the Town.

       Regarding the assertion that Council attempted to portray Berry as antagonistic and defiant, the fact is that she was. ECF No. 90, p. 9-11, ¶ 20; Ex. 6, Tederick Dep. 80:22-82:6, 83:18-24. Nevertheless, neither the Town nor Council attempted to portray her as such and it had no bearing on her termination.

       With regard to the allegations lodged against Holloway, it is accurate that he and Berry had a disagreement when Holloway asked Berry to read a citizen's letter at a Council meeting. ECF

No. 75, pp. 7-8, ¶ 27. Berry refused to abide by his request, despite the fact that she understood that she was to follow instructions from individual Councilmembers unless she had different instructions from Council as a whole. ECF No. 93, p. 3, ¶ B. Berry understood that Holloway had the authority to ask her to read a citizen's letter at a Council meeting, but based on an alleged (hearsay) direction from a previous Council, she refused to comply with Holloway's request. Ex. 7, Berry Dep. 355:18-363:4; Ex. 7, Berry Dep. Exs. 64-72. Once Tederick became aware of the disagreement, he intervened and the discussion related to the disagreement between Berry and Holloway ended. *Id.* Berry's characterization of Holloway as hostile and her as polite are opinions entitled to no weight for purposes of a motion for summary judgment. Further, the Town disputes that the discourse between Holloway and Berry was retaliatory or constituted a threat to Berry's job. She was simply asked to perform a task by her supervisor, she refused to do so, and he rightfully became angry.

     **SOF K:**     Sealock was instructed by Council (not the Town) not to have direct contact with Berry during the course of the Town's investigation into the complaint which Berry lodged. Ex. 11. He was advised that if he needed to communicate with the Clerk, the communications should go through the Mayor. *Id.* Although Berry claims this hindered her ability to do her job, she has provided no facts to support that conclusion. Ex. 7, Berry Dep. 303:5-306:11. In fact, she has testified that she would learn Sealock's position on agenda items from other Councilmembers. *Id.* Berry never went to the Mayor to request assistance communicating with Sealock. *Id.*

     Holloway did stop communicating with Berry after she falsely accused him of threatening her. ECF No. 93-5, Holloway Dep. 128:8-20. Berry's characterization of this as "shunning" her has no place in a motion for summary judgment. Further, to suggest that other Councilmembers ostracized her is a subjective opinion, refuted by others. ECF NO 93-11, Tewalt Dep. 95:22-96:25.

Again, Berry has provided no facts to support her claim that she had any difficulty doing her job after she lodged her Complaint against Sealock. In fact, Berry has continuously maintained that she did her job well. See, e.g., ECF No. 80, p. 3, ¶ 2. The Town denies that Sealock, Holloway and the other Councilmembers were subject to the Town's policies or that what has been described by Berry herein violates the Town's policies. See ECF No. 75, where these issues have been extensively briefed. Further, ECF No. 93-2, Bush Dep., Ex. 1, p. 5, is not a Town policy.

  **SOF L:**  The Town disputes that Sealock subjected Berry to the treatment she has complained of and disputes that Berry reported anything "outlined above" to Town officials before August 15, 2019. Ex. 1, Sealock Dep. (8/31/21) 312:22-314:14; Ex. 2, Sealock Dep. (7/13/21) 77:15-81:7; 84:1-85:13; 92:5-93:1; 208:21-209:4.

  With regard to the "refrigerator incident," which occurred years prior to August 2019, Berry did not "report" it to Bush. She simply asked Bush whether she had seen Sealock "push[]" her in front of the refrigerator. ECF No. 76-1. To the extent that Berry relates an alleged conversation she had with Bush thereafter, it constitutes inadmissible hearsay which the court may not consider. Berry did not report the "refrigerator" incident to Council, file a formal complaint or seek criminal charges against Sealock. ECF No. 93-1, Berry Dep. 161:22-162:13.

  Regarding the statements about Berry's perception of Bush not taking action when she felt mistreated in the past, these are opinions, which are not factually supported, and which are irrelevant to the issues in this case. They are also based on unsupported hearsay.

  Bush did not testify that "zero tolerance" for sexual harassment depended on who the Town Manager was. This is a complete mischaracterization of her testimony. Her testimony was that different Town Managers handled ***discipline*** for sexual harassment in different ways; i.e. termination versus lesser discipline. ECF No. 93-2, Bush Dep. 31:10-12.

To the extent that Berry claims to have "complained to Bush, Napier, Holloway, Thompson, Tederick and all of Council on multiple occasions," Berry is unclear what complaints she refers to. Other than Berry's self-serving statements, there is no evidence she made any complaint about any behavior (except to the extent she complained to Napier about a former Councilmember in May 2019 and told Napier not to tell the Town, see ECF No. 76-4) by anyone until August 15, 2019. Ex. 1, Sealock Dep. (8/31/21) 312:22-314:14; Ex. 2, Sealock Dep. (7/13/21) 77:15-81:7; 84:1-85:13; 92:5-93:1; 208:21-209:4; Ex. 4, Tharpe Dep. 14:23-15:23; Ex. 11, Gillispie Dep. 17:2-25; Ex. 12, Tewalt Dep. 34:5-36:2; Ex. 3, Thompson Dep. 71:21-72:23.

Berry did not complain to Napier that Sealock had threatened her job in May of 2019, and he did not. ECF No. 76-4. Further, Napier was not Berry's supervisor or HR representative, and Berry directed Napier not to convey the substance of her communication to the Town. *Id*. Napier, Berry's co-worker, had no reason to be involved in her complaint, and he excluded himself. Ex. 9, Napier Dep. 20:21-21:19. Napier, as Town Counsel, does not conduct investigations of complaints made to HR. *Id.*

To the extent that Berry states that she was "chastised" for including Napier on an email dated October 2, 2019 which pertained to her complaint about Sealock, her characterization is disputed, a subjective opinion and should not be considered by the court. Berry was simply advised that "[t]he Town Attorney and his office are not involved with this matter. It is inappropriate to copy him on this personnel matter as his office is not involved." ECF No. 93-13, Thompson Dep. Ex. 17.

**SOF M:**      Berry's claim that the Town used a "RIF scheme" to terminate her is an unsupported conclusion entitled to no weight. There are also no facts to support the claim that "[t]he rush to implement the scheme and Berry's termination in the guise of a budget proposal did

14

not follow the Town's past practice and procedure." Sealock did not testify, as suggested, that the Town typically has four meetings on the budget, nor did he testify what happens at the different meetings. Before presenting the idea of right-sizing the government to Council, Tederick spent a lot of time analyzing the Town's expenditures, including salaries/wages and fringe benefits. ECF No. 75-7. He was tasked with presenting his budget proposal to Council on February 1, 2020, and he did so. *Id.* All Councilmembers, including Ms. Thompson, voted to approve the budget which Tederick presented which had the effect of eliminating the full-time Clerk of Council position a number of other positions. *Id.*

Berry's conclusory statement that the "Town obviously had no problem with funds," is an opinion entitled to no weight. Jones also did not receive a $17,000 pay increase. ECF No. 90, p. 19, ¶ 65. Berry's reliance on testimony from Thompson that she did not think Tederick had a plan in place is inadmissible opinion/hearsay without a foundation and is not in regard to filling Berry's position in any event. Berry's claim regarding the rehire of a former male employee at the rate of $197,000 is based on inadmissible hearsay which the court may not consider. Further, Berry's contention is also not supported by the hearsay document to which she refers.

Berry has no basis upon which to state that "Judkins was retained in connection with the reduction in force to tell Tederick how to avoid liability with regard to Berry." She also has no basis to state that it "was not the Town's practice to have individual councilmembers discuss issues with outside legal counsel outside the presence of other councilmembers." Although Thompson has testified that she thought the optics of including Berry in the reduction in force looked bad and she suggested Berry remain as part-time Clerk of Council, Thompson voted to approve the budget which eliminated Berry's position, as did all Council members. ECF No. 75-7. It is worth noting, that in contrast to Thompson's testimony, others who were present at the meeting that Thompson

15

describes deny that there was any discussion specifically pertaining to Berry. Ex. 10, Gillispie Dep. 67:4-69:4. Ex. 6, Tederick Dep. 237:3-243:4.

As it pertains to the assertion that Tewalt, then Mayor, was left out of the conversation after he recommended that Berry be allowed to continue as part-time Clerk of Council, that is not supported by the cited portion of the record (or anything else). Further, Tewalt's recommendation carried no weight as he had no vote on the budget or role in employment decisions, unless there was a tie vote of Council. ECF No. 75-1, Chapter II, § 8.

Regarding whether Berry would have been afforded the opportunity to become part-time Clerk of Council, a discussion never occurred because Berry found out that her full-time position was being eliminated, packed up her stuff and left the building. Ex. 6, Tederick Dep. 249:12-252:15. She never had an exit meeting with the Town. *Id*.

It is completely untrue – and not supported by the portions of the record cited – that Council did not reach a consensus to eliminate Berry's full-time position. There was no specific vote to eliminate Berry's full-time position because that was not what was at issue. ECF No. 75-1. What was at issue was the budget, which included elimination of a number of positions, the full-time clerk among them. *Id*. Council unanimously voted to approve the budget, which eliminated the full-time clerk position. *Id.* So, just as Berry had become the full-time clerk through a vote on the budget, her full-time clerk position was eliminated through a vote on the budget. Sealock and Holloway did not vote to eliminate Berry's full-time position as an independent action item. They, as obligated by their oath, voted on the budget, which impacted not only Berry's full-time clerk position, but many other positions. Ex. 2, Sealock Dep. (7/13/21) 248:4-10. It is unclear whether Holloway and Sealock were present when Tederick pointed out that Berry's job would be impacted

16

by the budget recommendation. There is contrasting testimony on this point. ECF No. 93-10 144:7-15.

## II.     PLAINTIFF'S RESPONSES TO THE TOWN'S STATEMENTS OF MATERIAL UNDISPUTED FACTS

Following her long recitation of purported material facts, Berry responds to the Town's Statement of Material Undisputed Facts. In so doing, she again mischaracterizes, misstates and/or ignores the record. She also characterizes many of the Town's statements of fact which she cannot dispute as "not material." The Town does not intend to argue with Berry over whether a fact is material or not; the court should make that determination. To the extent that it is necessary to do so, the Town addresses Berry's Responses to the Town's Statements of Material Undisputed Facts in the paragraphs which follow4.

**SOF ¶ 11:**     Councilmembers are not employees of the Town, and the Town's Employee Handbook does not define them as such. ECF No. 75-8, p. 5. Berry completely mischaracterizes what the Employee Handbook states. It states, "All employees of the Town of Front Royal, those persons who work for the Town in return for financial compensation, except elected officials and independent contractors, are governed by this common set of employment policies." *Id.* Councilmembers do not qualify as employees, but as "persons who work for the Town in return for financial compensation," who are not (and cannot be) governed by the Town's employment policies because they answer only to the electorate. And, while the Town admits that elected officials cannot sexually harass the Town's employees, it remains the case that the Town has no control over or liability for elected officials' actions, especially when the Town has not been made aware of allegations of improper behavior by an elected official.

---

4 The Town does not address paragraphs which have already been fully addressed in section I, above.

**SOF ¶ 12:**     Berry has no basis to dispute that there were Councilmembers who did not notice the budget line item that resulted in Berry becoming a full-time employee. What an individual noticed or did not notice is known solely to that individual. Berry's characterization of her performance evaluations as "excellent" should be given no consideration. There had been concerns with her performance. See ECF No. 90, pp. 4-5, ¶ 2. But, again, Berry's termination was not based on performance issues. Berry's termination also was not a result of her complaint against Sealock, and it is only Berry's subjective, unsubstantiated belief that ties the two events together.

**SOF ¶ 14:**     Berry's self-serving statements about what Sealock purportedly did to her are so much in dispute that one wonders how Berry can represent to the court in good faith that it is "undisputed Sealock looked Berry up and down, leered at her, and made remarks about her dress, legs, and shoes." Ex. 1, Sealock Dep. (8/31/21) 312:22-314:14; Ex. 2, Sealock Dep. (7/13/21) 77:15-81:7; 84:1-85:13; 92:5-93:1; 208:21-209:4. Not a *single person* other than Berry ever saw Sealock engage in any of the behaviors toward Berry that she has attributed to him. See, e.g., Ex. 4, Tharpe Dep. 37:20-38:1; Ex. 12, Tewalt Dep. 73:22-74:21; Ex. 3, Thompson Dep. 188:17-190:7.

To the extent that Berry claims the "shoe" email, which she failed to provide in its entirety to Bush and Thompson, as she attempted to persuade these women that Sealock had harassed her, was an apology by Sealock for inappropriate behavior, this characterization is very much disputed. It is impossible to read Berry's immediate response to Sealock's email, "Not at all Your fashion advice cannot offend me. Lol" and conclude, as Berry has testified to, that what she meant to convey was that Sealock could comment on her shoes, but he needed to stop sexually harassing her. Had Berry just reamed him out for sexually harassing her prior to the Council meeting on June

25, 2018, the Town cannot image a person alive who would accept that Berry would have sent that response to Sealock's email.

**SOF ¶ 16:** Again, in an effort to advocate, regardless of the facts, Berry misrepresents that it is undisputed that Sealock referred to Berry as a receptionist. Ex. 2, Sealock Dep. (7/13/21) 92:5-10.

**SOF ¶ 17:** The Town's recitation of Berry's testimony at pp. 251 and 252 of her deposition is accurate. If Berry has facts to reflect that the Town saw the meme, one would have expected her to provide some evidence to back this up. The Town has never seen the meme, nor did Sealock. Ex. 2, Sealock Dep. (7/13/21) 153:5-154:23.

**SOF ¶ 19:** Sealock did not prepare an evaluation that was different in substance from the evaluation provided to Berry in 2019, nor does the cited testimony support that false statement. The undisputed testimony reflects that Berry's performance evaluation was done before she made her complaint on August 15, 2019. See, e.g., ECF No. 93-13, p. 64.

**SOF ¶ 20:** Berry mischaracterizes the content of the Timeline. Ex. 13, Bush Dep. (12/13/21) 63:3-64:5. In any investigation relating to a claim of harassment, bullying and/or retaliation, Bush documents that she has concerns regarding such charges. *Id.* Bush fully investigated the claims which Berry brought to her attention, but Berry refused to cooperate with the investigation. Ex. 13, Bush Dep. (12/13/21) 38:3-39:10. The Town disputes that Berry had made any complaint to the Town when she communicated with Napier on May 13, 2019 and told him not to share the communication with the Town. ECF No. 76-4. Further, the communication relates to a former Mayor, in any event. *Id.* The Town also denies that any complaint was made to Holloway until August 15, 2019, and it was thereafter that the Town, through Tederick, became aware of the complaint. ECF No. 76-7.

**SOF ¶ 22:**     With regard to the investigation being delayed due to Judkins' schedule, it is undisputed that the Town was advised that her schedule delayed her ability to provide legal advice to the Town. Ex. 6, Tederick Dep. 169:24-170:22. It matters not whether that was, in fact, true. It is what the Town was told. *Id.*[5]

**SOF ¶ 23:**     Again, Berry mischaracterizes the content of the Timeline. See response to SOF ¶ 20, above. Bush's subjective opinions as to whether Council wanted to be involved in the investigation or why they may not have wanted to be involved are unfounded, speculative opinions which the court may not consider. The fact is, Council wanted the Town to investigate the complaint so that there would be an unbiased and uninfluenced and fair investigation of a complaint by their clerk against a fellow councilmember. Ex. 6, Tederick Dep. 101:1-102:7.

**SOF ¶ 24:**     Again, to be clear, for reasons set for above, the Town disputes that Sealock engaged in the behavior which Berry has attributed to him. The May 2019 email to Napier pertains to a former elected official, and was shared with Berry's co-worker, with an instruction by Berry not to pass it on to the Town. ECF No. 76-4.

**SOF ¶ 26:**     The Town has fully addressed the PIO matters in ECF No. 75 and ECF No. 90. The arguments/facts set forth therein are incorporated by reference.

There is no factual basis to support the claim that the Town hired Judkins to effect Berry's termination. Nor is there any factual basis to support the statement that Judkins drafted the letter which Tederick sent to Berry on August 19, 2019.

---

5 To the extent that Berry states that Judkins has not been listed as a witness for the Town, that is true because her communications with the Town are fully protected by the attorney-client privilege. The Town will appeal ECF No. 97. If Judkins is eventually forced to testify, which is not contemplated by ECF No. 97, the Town reserves the right to amend its pleadings to address this issue.

**SOF ¶ 31:**     Berry's reference to the mysterious meme was not a complaint of sexual harassment by any Town employee or even a sitting elected official. Nor was the meme created by any Town employee or elected official. Berry's reference to the meme, which she found offensive, is not a claim of sexual harassment by anyone over whom the Town had control. In fact, it is entirely unclear who made the meme or why Berry decided to bring this to the attention of Council in the first place.

Finally, again, the Town, for reasons already stated above, denies Berry's allegations that Sealock treated Berry in a manner which was discriminatory, hostile or retaliatory.

## III.    LEGAL ISSUES/ARGUMENT

### A. The Supremacy Clause Does Not Make the Town Responsible for Alleged Violations of Title VII by Elected Officials

Berry asserts that, "The Town first argues '*without valid authority'* that it is not responsible under Title VII for the acts of its Mayor and Town Councilmembers because they are elected." ECF No. 93 (emphasis added). While Berry may disagree with the position taken by the Town and/or the holding from the caselaw cited in its summary judgment memorandum, the Town has cited valid authority for its position. It is clear that *Poloschan v. Simon*, C.AA. No. 9:13-1937-WSB-BMM, 2014 U.S. Dist. LEXIS 60104 (D.S.C. 2014), holds that a county government cannot be liable for sexual harassment by an elected official because the government lacks authority over such officials.

Berry continues by arguing that the Supremacy Clause to the United States Constitution makes the Town liable for sexual harassment by elected officials. In support, Berry cites to *King v McMillan*, 594 F. 3d 301 (4th Cir. 2010), and submits that the holding of *King* "controls here." ECF No. 93, p. 27. *King*, in fact, has no bearing on the issues in this case and, in any event, does not support imposing liability upon the Town for alleged misdeeds by elected officials.

In *King*, a former deputy sheriff sued the Sheriff in his official capacity under Title VII, for sexual harassment. While the case was pending, an election was held, and a new sheriff was elected. The court substituted the new sheriff for the former sheriff for purposes of the Title VII, official capacity claim for sexual harassment. The new sheriff objected, claiming that Virginia law does not create an institutional sheriff's office, but rather each sheriff is a singular entity who is independent of his predecessors and successors. The court rejected that argument, stating that if it accepted the argument, it would prevent plaintiff from pursuing a Title VII claim which would make Virginia law in conflict with federal law. Under the Supremacy Clause, the court ruled, Virginia law would have to yield. The *King* court did not have before it the issue of whether a municipal government could be responsible for the alleged misdeeds of its elected officials. Since that issue was not before the *King* court, there is no holding from the case which supports Berry's position that the Town is liable for the alleged misdeeds of elected officials. In fact, the Town submits that the holding from *King* supports the Town's position. If, as the *King* court found, plaintiff there would have had no Title VII remedy if the new sheriff was not substituted for the old, the implication is that the plaintiff had no legal remedy against the municipality which the sheriff served.

Further, the Town notes that, in *King*, the plaintiff sued the Sheriff who appointed her and controlled her work. Thus, a plaintiff, such as Berry, could certainly argue that elected officials (like the Sheriff in *King* and Sealock and Holloway here) are subject to suit in their official capacity for Title VII liability.[6]  Thus, following the well-reasoned holding of *Poloschan* would not leave

---

[6] The Town takes no position on this issue as Berry did not pursue a claim against any individual Councilmember.

Berry without a remedy under Title VII, thus making the Supremacy Clause inapplicable, there being no conflict between federal and state law.

To the extent that Berry also relies on *McCall v. Oregon*, 2013 U.S. Dist. LEXIS 168517 * (D. Ore. Nov. 27, 2013) to argue that a Town is responsible under Title VII for actions of its elected officials, the case is not controlling, and the Town submits this court should disregard it. Additionally, the *Bruno v. Monroe County* case cited by Berry, 2009 U.S. Dist. LEXIS 74363 *6 (S.D. Fl. 2009) is inapposite, as it does not address the issue at hand at all.

Finally, the Town is (and was) aware of *Freeman v. Dal-Tile Corp.*, 750 F.3d 413, 423 (4th Cir. 2014), which stands for the proposition, among others, that an employer may be liable for third party harassment of an employee if the employer knew or should have known about it and failed to take remedial action reasonably calculated to end the harassment. In this case, the evidence is clear that Berry's first complaint of "harassment" to the Town was on August 15, 2019. Thereafter, Berry was not subject to harassment by the persons about whom she complained (Sealock and Holloway). In fact, Berry maintains they avoided her. Thus, *Freeman* also provides no support for Berry's position that the Town should be held liable under Title VII for the alleged misdeeds of elected officials.

### B. The Town is entitled to Summary Judgment on Count I – Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964.

In her Complaint, Berry pled Count I as "Discrimination on the Basis of Sex in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*." ECF No. 1, p.14. She did not, as she does in her opposition to the Town's motion for summary judgment, break Count I into separate claims/counts, one for "sex discrimination" and one for "sexually hostile work environment." To the extent that Berry argues that the Town only partially challenges Count I in its motion for summary judgment; i.e. that it does not challenge the sex discrimination claims

other than the hostile work environment claim, that is untrue. The Town clearly states in its motion for summary judgment that, "[t]he evidence in this case does not establish a claim of discrimination on the basis of sex in violation of Title VII." That is a direct challenge to Count I in its entirety, as it is pled in the Complaint.

To the extent that Berry claims her sexual discrimination claim (Count I) is supported by her contention that, following her August 15, 2019 complaint, she was not given the PIO position for which she was qualified and was the right fit, the Town has fully briefed this issue in its opposition to Berry's motion for summary judgment. As set forth therein, the evidence does not support Berry's position regarding the PIO position. Rather than reiterating what was argued in its opposition to Berry's motion for partial summary judgment, the Town incorporates those arguments herein by reference and submits to the court that the evidence does not support a claim for sexual discrimination based on the Town not offering Berry the PIO position.

Berry also takes issue with the Town's position that the evidence in this case is insufficient to establish a hostile work environment claim based on sex. In support, as throughout the litigation, she cites to very little ***factually admissible evidence*** to support her position. In her opposition, she cites to only the following incidents which she contends are sufficient to establish the claim:

- The "blow job" comments
- The alleged job threat when Sealock told her Tharpe suggested that she had a target on her back if he was re-elected
- Holloway's alleged job threat on August 16, 2019
- Denial of the PIO position
- Alleged modification to planned pay raise
- Removal from her seat at Council table
- Exclusion from closed session of Council
- Alteration of flexible work schedule
- Requirement that she post her time in/out of the office
- Abuse from Holloway when she refused to read a citizen's letter at a Town Council meeting
- Ostracism and shunning by Councilmembers

There is no evidence to suggest that any of the above "incidents," if they occurred, had anything to do with Berry's sex. Further, the incidents described are not pervasive or severe as the Town has already briefed extensively in its memorandum in support of motion for summary judgment. The Town need not remind the court that a plaintiff asserting a hostile work environment claim has a high hurdle to cross to establish the pervasive or severe prong of the cause of action. Here, the identification of a few "incidents" over years, none of which are tied to Berry's gender, is legally insufficient to state a claim for hostile work environment based on sex.

### C. Berry's Claim that the Record is Sufficient to Defeat Summary Judgment on the Retaliation Claim Fails.

Berry's opposition as it pertains to the retaliation claim is that her "protected activity" commenced at some unspecified and unknown time when she allegedly complained to Sealock about his "sexist" behavior. Putting aside that it is highly contested that Sealock engaged in the conduct of which Berry now complains or that she said anything to him about such alleged conduct, the record is clear that no one witnessed what Berry complains of, and the Town knew nothing about it until such time as she shared an email with Holloway on August 15, 2019, which Holloway forwarded to Tederick, and Tederick then passed along to Bush. Unquestionably, prior to August 15, 2019, Berry did not engage in protected activity. Thus, the retaliation claim can only be premised on what happened thereafter. The Town, in its opening memorandum, has expressly addressed each alleged retaliatory act outlined by Berry in her Complaint to establish why the evidence is not sufficient to support a retaliation claim, and the Town will not re-plow the same ground here. That being said, the Town does not want to be viewed as giving short-shrift to the arguments made by Berry.

Berry maintains in her opposition that threats of termination are sufficient to constitute materially adverse actions for purposes of a retaliation claim, citing *Maron v. Va. Polytechnic Inst.*

& *State Univ*., 508 F. App'x 226 (4th Cir. 2013). Berry then claims that the statements by Holloway outside Town Hall on August 16, 2019, purportedly threatening her job, constitute materially adverse actions. In *Maron*, however, the plaintiff's supervisor made numerous threats to plaintiff's job over an unspecified period of time and had the capability of terminating plaintiff's position. Here, however, Berry contends that she had a single conversation with Holloway which she interpreted to be a threat to her job. She has quoted the conversation in her Complaint, ECF No. 1, ¶ 43, and the Town submits that no rational person can read the quoted language to be a threat to Berry's job. Further, Holloway could not terminate Berry. She served at the will of Council. So, here, we do not have a situation such as was present in *Maron*. Holloway's conversation with Berry on August 16, 2019 did not amount to a materially adverse employment action.

To the extent that Berry submits that there was a materially adverse employment action because Sealock demanded Berry be penalized for her accusations, she is wrong. First, that alleged statement was made to Bush during the course of her investigation into Berry's complaint against Sealock. Berry knew nothing about that alleged statement during the course of her employment and, thus, it could not have dissuaded her from making or reporting an incident of discrimination. Further, Bush did nothing in response to the alleged comment in any event.

Berry also comes forward in her opposition with a new claim that has never before been raised; that is that had she not been terminated and had she been given the PIO position, she could have continued to do the part-time clerk position and the part-time PIO position and continued as a full-time employee of the Town. There is no evidence that this would have or could have occurred. There is no evidence that this was even considered. Perhaps had Berry raised this as a possibility and/or not stormed out of the Town offices when she learned the full-time position was

being defunded, a conversation to this effect could have taken place. But, Berry's supposition that she could have continued on full-time has no factual support in the record.

Berry also maintains that the circumstances leading to the reduction in force establish pretext. In support, she claims that the Town never acted in an official manner to terminate Berry as there was no vote of Council. This, too, is a newly raised argument, never pled in the Complaint or disclosed in discovery. It should not be considered or admissible for any purpose. Notwithstanding, it is false. Just as Berry went from part-time Clerk of Council to full-time Clerk of Council by a vote on the budget which included a line item to fund the Clerk position at a full-time level, the full-time Clerk of Council position which Berry held was eliminated by a line item in the budget cutting the position back to part-time. The budget was subsequently voted on and approved by Council.

### D. The Town has Cited the Correct Standard for Evaluating a Claim of Retaliatory Hostile Work Environment in this Circuit.

Factually, it is unnecessary for the Town to address anything Berry raised regarding this claim, as it would just be repeating what it has already argued. It is clear that Berry and the Town have a difference of opinion as to whether the undisputed material facts in the record are sufficient to establish a claim for retaliation and/or retaliatory hostile work environment (or anything else).

Legally, Berry and the Town are also at odds as to the elements required to establish a claim for retaliatory hostile work environment. The Town has cited authority from within this district which makes it clear that to establish such a claim, a plaintiff must prove: (1) engagement in a protected activity; (2) that she was subjected to *severe or pervasive* retaliatory harassment by a supervisor; and (3) a causal link between the protected activity and the harassment. *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 840 (E.D. Va. 2016). As the *Hinton* court explained, a retaliatory hostile work environment claim "requires establishing the same facts as a retaliation

claim, save that the 'materially adverse' element is replaced by 'subjected to **severe or pervasive** retaliatory harassment by a supervisor.'" *Id.* at 840 (emphasis added). Berry, relying on cases from the 3rd Circuit, suggests that "severe and pervasive" is not part of the elements of the cause of action, but rather that the proper standard for evaluating such a claim is "material adversity."

The *Hinton* court is not the only court within this district which has held, post *Burlington Northern*, that a plaintiff must establish "severe and pervasive" retaliatory harassment to state a claim for retaliatory hostile work environment. *See, e.g., Farmer v. Miller,* No. 5:20-CV-00677-M, 2022 U.S. Dist. LEXIS 50303 *16 (E.D.N.C. Mar. 21, 2022); *Prosa v. Austin*, Civil Action No. ELH-20-3015, 2022 U.S. Dist. LEXIS 23514 * 91 (D. Md. Feb. 8, 2022); *Bullock v. Barrett*, No. 3:19-2863-MGL-PJG, 2021 U.S. Dist. LEXIS 171178, fn. 3 (D.S.C. Feb. 23, 2021); *Anderson v. JA Piper Roofing Co.*, No. 6:19-cv-00859-DCC, 2020 U.S. Dist. LEXIS 192158 *4 (D.S.C. Oct. 16, 2020). Additionally, other circuits, post-*Burlington Northern*, have continued to hold that a plaintiff must establish "severe and pervasive" retaliatory harassment to state a claim for retaliatory hostile work environment. *See, e.g., Flanagan v. Office of the Chief Judge*, 893 F.3d 372, 375 (7th Cir. 2018); *Kelly v. Dun & Bradstreet, Inc*., 641 F. App'x 922, 923 (11th Cir. 2016); *Khamati v. Sec'y of the Dep't of the Treasury*, 557 F. App'x 434, 443 (6th Cir. 2014); *Baird v. Gotbaum*, Civil Action No. 11-669 (RBW), 2013 U.S. Dist. LEXIS 189758 * 9 (D.D.C. May 17, 2013).

Considering that the courts within this district have uniformly held that, in order to state a claim for retaliatory hostile work environment, the "severe and pervasive" showing must be made, and considering that the bulk of authority outside this district after *Burlington Northern* have also so held, the Town submits that this court should disregard the 3rd Circuit cases cited by Berry and evaluate the retaliatory hostile work environment claim under the standard enunciated in *Hinton*, *supra*.

**E.  Berry has not Challenged the Town's Motion for Summary Judgment as it Relates to her FMLA Claim, and it Should be Dismissed.**

Berry does not contest the Town's motion for summary as it pertains to her FMLA claim. Accordingly, the motion should be granted. *See, e.g., Stanley v. Wentworth Voluntary Fire Dep't, Inc.,* No. 1:10CV380, 2011 U.S. Dist. LEXIS 93129 *27 (M.D.N.C. Aug. 17, 2011).

**IV.     CONCLUSION**

WHEREFORE, for the reasons previously stated in its Memorandum in Support of Summary Judgment, for the reasons stated herein, and based on any additional reasons to be argued at the hearing on the Motion for Summary Judgment, defendant, Town of Front Royal, Virginia, by counsel, requests that the court grant its Motion for Summary Judgment and dismiss this case with prejudice.

Respectfully submitted,

**TOWN OF FRONT ROYAL, VIRGINIA**
By Counsel

McGAVIN, BOYCE, BARDOT,
  THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703) 385-1000 Phone
(703) 385-1555 Facsimile
hbardot@mbbtklaw.com


_____/s/_____
Heather K. Bardot, Esquire
Virginia State Bar No. 37269
Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of April, 2022, I electronically filed the foregoing pleading with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Timothy E. Cupp, Esquire
Shelley Cupp Schulte, PC
1951 Evelyn Byrd Avenue, Suite D
PO Box 589
Harrisonburg, Virginia 22803
Telephone:     (540) 432-9988
Facsimile:     (804) 278-9634
cupp@scs-work.com
Counsel for Plaintiff

Tim Schulte, Esquire
Shelley Cupp Schulte, PC
2020 Monument Avenue
Richmond, Virginia 23220
Telephone:     (804) 644-9700
Facsimile:     (804) 278-9634
Shelley@scs-work.com
Co-Counsel for Plaintiff

McGAVIN, BOYCE, BARDOT,
 THORSEN & KATZ, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, Virginia 22030
(703) 385-1000 Phone
(703) 385-1555 Facsimile
hbardot@mbbtklaw.com

_____/s/_____
Heather K. Bardot, Esquire
Virginia State Bar No. 37269
Counsel for Defendant