IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JENNIFER BERRY BROWN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 5:21-cv-00001 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| TOWN OF FRONT ROYAL, VIRGINIA, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendant. ) | |

Plaintiff Jennifer Berry Brown brings this lawsuit asserting claims under Title VII and the Family and Medical Leave Act ("FMLA") against Defendant Town of Front Royal, Virginia ("the Town"). Brown claims that the Town subjected her to a hostile work environment and then, after she reported that conduct, retaliated against her by firing her from her position as Clerk of Council. After Brown raised her complaints about a hostile work environment to the Town's human resources department ("HR"), HR initiated an investigation into those claims. At some point, the Town hired attorney Julia Judkins[1] as outside counsel to act as "an expert in personnel matters [and] to offer legal advice and counsel in the event it was needed." (Dep. of Matthew Tederick 149:8–14, Oct. 7, 2021 [ECF No. 46-1].)

During discovery, Brown filed a motion to compel the Town to produce certain documents and communications among the Mayor, town councilmembers, and Judkins. (*See*

---

[1] Judkins's former law firm represents the Town in this matter. While she remains counsel of record in this case, the court understands that she has retired from the practice of law. The Town has filed a motion to withdraw Judkins from this case and that motion remains pending. (*See* ECF No. 118.)

ECF No. 43.) Brown also sought to depose two witnesses about their communications with Judkins and any advice she provided related to Brown's claims and subsequent firing. The court referred that motion to Magistrate Judge Joel C. Hoppe, who entered a Memorandum Opinion and Order granting in part and denying in part Brown's motion to compel. (ECF No. 97.) In so doing, the magistrate judge concluded that the Town had waived its attorney-client privilege related to its investigation of Brown's hostile work environment claim. The Town filed objections to that Order (ECF No. 109), which are now before the court. As explained below, the court will overrule those objections and order the Town to produce the investigative materials at issue.

## I.  BACKGROUND

Beginning in 2005, Brown worked for the Town as the Clerk of Council in a part-time capacity, later becoming the full-time Clerk. (Compl. ¶¶ 12, 70 [ECF No. 1].) In that role she reported to the six councilmembers that comprised the Town's governing body. (ECF No. 46-1, at 7.) Brown alleges that one of those councilmembers, William Sealock, repeatedly sexually harassed her beginning when he was appointed to the council in January 2017 until August 2019. (Compl. ¶¶ 14–15, 23.) Sealock's alleged harassment apparently ended after an incident in August 2019, after which Brown made a formal complaint to Julie Bush, the Town's HR Director. (*Id.* ¶¶ 36–46.) Bush opened an investigation into Brown's allegations. (*Id.* ¶ 46.) The Town retained Judkins "to ensure that [it was] following employment law and the Personnel Policy, and . . . to offer advice to Council." (Tederick Dep. at 246:10–13.)

On November 15, 2019, Bush sent Brown an "Investigation Summary Report" which found "no corroboration of Brown's allegations" (*see* ECF No. 46-1, at 14) and indicated that

the investigation into Sealock had closed. (Compl. ¶ 66.) Brown felt that the summary report did not adequately address the concerns she had raised with Bush, and she believed that the report evidenced a "sham investigation." (*Id.*)

In December 2019, following a surgery, Brown went on FMLA leave. (*Id.* ¶ 17.) When she returned from her leave on January 30, 2020, the Town informed her that her employment as Clerk of Council would be terminated, effective February 4. (*Id.* ¶ 69.) The Town explained that, in a "right-sizing" effort, it would be eliminating several positions to reduce the Town's expenses. (*Id.*) The Clerk position would be converted from a full- to part-time position, and two current Town employees would receive a promotion to assume those responsibilities. (*Id.*) After the Town terminated her employment, Brown filed the present lawsuit, asserting that the Town's purported financial reasons for firing her were pretext for unlawful sex-based discrimination and retaliation under Title VII and retaliation under the FMLA. (*See id.* ¶¶ 74–113.)

On November 5, 2021, during discovery in this case, Brown filed a motion to compel the Town to produce "information and documents underlying [Judkins's] involvement in both the investigation of [Brown's] harassment and retaliation complaints and in the termination of [Brown's] employment." (Pl.'s Br. Supp. Mot. to Compel at 17 [ECF No. 46].) Brown also sought to reconvene the depositions of the Town (through Matthew Tederick, former interim Town Manager and the Town's corporate designee, *see* Fed. R. Civ. P. 30(b)(6)) and Councilmember Letasha Thompson to allow a "full inquiry" into any communications Judkins had with these witnesses regarding Brown's complaints of harassment and retaliation. (*Id.*) The Town opposed the motion, arguing that such documents and communications were protected

by attorney-client privilege. Brown argued that the Town had waived attorney-client privilege by placing Judkins's advice "at issue" in the case. (Pl.'s Br. Supp. Mot. to Compel at 13–17.)

On March 31, 2022, Judge Hoppe entered a Memorandum Opinion and Order granting in part and denying in part Brown's motion to compel. (ECF No. 97.) That Order denied Brown's motion insofar as she sought discovery related to Judkins's involvement in the decision to terminate Brown's employment, because the Town had not affirmatively placed at issue Judkins's involvement in that decision and therefore had not waived its attorney-client privilege. But the magistrate judge reached the opposite conclusion with respect to Judkins's advice and involvement in the investigation of Brown's harassment complaint. He found that the reasonableness of the Town's response to Brown's harassment allegations was an element of Brown's hostile work environment claim, which waived the Town's attorney-client privilege with respect to Judkins's "investigation and the conclusions drawn therefrom . . . ." (Mem. Op. at 11, Mar. 31, 2022 [ECF No. 97] (hereinafter "Mem. Op.").)

On April 14, the Town filed objections to Judge Hoppe's Opinion and Order, *see* Fed. R. Civ. P. 72(a), asserting that the magistrate judge had erroneously concluded that the Town waived its attorney-client privilege because Bush, as the Town's HR director, conducted the investigation and wrote the report; Judkins merely offered legal advice and counsel as it concerns the report. (*See* Def.'s Objections at 2 [ECF No. 109].) Brown responded to these objections,[2] and the matter is now ripe for disposition.

---

[2] In addition to her merits arguments, Brown contends that the Town's objections are untimely. (*See* Pl.'s Br. Opp. Def.'s Objections at 2 [ECF No. 111].) The court's April 6 order directed the parties to file their objections by 5:00 p.m. on April 14, 2022. (ECF No. 105, at 2.) The Town filed its objections at 9:54 p.m. on April 14, (*see* ECF No. 109), and only later sought leave to file out of time based on "excusable neglect" (*See* ECF No. 113). The court notes Brown's argument, but also recognizes the Fourth Circuit's "strong policy that cases be decided on their merits[.]" *See United States v. Shaffer Equipment Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Although the Town's

## II. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 72(a), "[w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision." Fed. R. Civ. P. 72(a). The rule allows a party to file an objection to a magistrate judge's nondispositive ruling within 14 days to preserve the issue for appeal. "The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [nondispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

"A factual finding is clearly erroneous when [the court is] 'left with the definite and firm conviction that a mistake has been committed.'" *TFWS, Inc. v. Franchot*, 572 F.3d 186, 196 (4th Cir. 2009) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). An order is contrary to law if "it fails to apply or misapplies relevant statutes, case law[,] or rules of procedure." *DNCSI Sols., LLC v. Landmore, Inc.*, 5:19cv70, 2020 WL 6252346, at *1 (W.D. Va. Oct. 23, 2020). A party seeking to overturn a magistrate judge's decision on a nondispositive motion "carries a heavy burden." *Id.*

## III. ANALYSIS

The attorney-client privilege "encourage[s] full and frank communication between attorneys and their clients and thereby promote[s] broader public interests in the observance

---

objections are technically untimely, the court finds no prejudice in the short, 5-hour delay in their filing. The court therefore will address the Town's objections on their merits and deny its motion for leave to file out of time (ECF No. 113) as moot.

of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). "[W]hen the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure." *Hawkins v. Stables*, 148 F.3d 379, 383 (1999). The party asserting attorney-client privilege must prove:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Grand Jury Subpoena*, 542 F. App'x 252, 253–54 (4th Cir. 2013). The parties do not dispute that attorney-client privilege applies to the communications between the Town and Judkins.

Instead, Brown argues—and Judge Hoppe concluded—that the Town waived its attorney-client privilege as to the Town's communications with Judkins related to Brown's harassment-allegations investigation.[3] "A client can waive an attorney-client privilege expressly or through [its] own conduct." *Hanson v. U.S. Agency for Int'l Dev.*, 372 F.3d 286, 293–94 (4th Cir. 2004). This conduct can include "plac[ing] the attorney-client relationship in issue, for example, by affirmatively invoking a defense of good[-]faith reliance on advice of counsel." *United States v. Moazzeni*, 906 F. Supp. 2d 505, 512 (E.D. Va. 2012) (citing *Rhone-Poulenc Rorer v.*

---

[3] Judge Hoppe found that the Town had not waived its attorney-client privilege with respect to outside counsel's advice in connection with Brown's *firing* and, accordingly, denied Brown's motion to compel testimony and documents related to that advice. (*See* Mem. Op. at 8–10.) Brown did not object to this portion of Judge Hoppe's opinion, so the court will not address it here.

*Home Indem. Co.*, 32 F.3d 851, 863 (3d Cir. 1994)); *see United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("Selective disclosure for tactical purposes waives the attorney-client privilege.").

The court notes that the Town has not affirmatively asserted an "advice-of-counsel" defense. The Town did reserve its "right to rely upon any and all affirmative defenses which become known through discovery and/or through evidence presented at trial . . . ." (Ans. ¶ 116 [ECF No. 7].) But "[s]uch a general pleading is insufficient to set forth a cognizable 'advice[-]of[-]counsel' defense . . . ." *See Sayre Enters., Inc. v. Allstate Ins. Co.*, No. CIV 506CV00036, 2006 WL 3613286, at *4, *2 n.4 (W.D. Va. Dec. 11, 2006) (analyzing affirmative defense that read, "The decisions of Allstate were reasonable, and appropriate and supported by an appropriate interpretation of the policy, and the law in the Commonwealth of Virginia").

Nevertheless, the court must determine whether the Town has placed the advice of its counsel at issue in this case—for example, by making it an element of its defense or impliedly relying on that advice to disprove an element of the plaintiff's case. Judge Hoppe analyzed whether the Town waived its attorney-client privilege with respect to Brown's hostile work environment claim, and the court finds that Brown's other claims do not potentially trigger a waiver of attorney-client privilege.[4] To succeed on a hostile work environment claim, a plaintiff

---

[4] Judge Hoppe did not address whether the Town waived attorney-client privilege as to Brown's Title VII retaliation, Title VII retaliatory hostile work environment, or FMLA retaliation claims. To establish retaliation under Title VII, a plaintiff must show that "(1) she engaged in a protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse actions." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008). To establish a retaliatory hostile work environment under Title VII, a plaintiff must show (1) that she engaged in protected activity, (2) that she was subjected to severe or pervasive retaliatory harassment by a supervisor, and (3) a causal link between the protected activity and the harassment. *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 840 (E.D. Va. 2016)(citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 283 (4th Cir. 2015)). Finally, a plaintiff can "establish a prima face case of FMLA retaliation by proving three elements: (1) the plaintiff engaged in a protected activity; (2) her employer took an adverse employment action

must show that (1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's terms and conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer. *See Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 277 (4th Cir. 2015). Judge Hoppe found that, for Brown to prove that the alleged conduct could be imputed to the Town, she must "establish[] both that the [Town] was, or should have been aware of the conduct rendering the environment hostile, and that it failed to take reasonable remedial action." (Mem. Op. at 10 (citing *Ocheltree v. Scallon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003).) In other words, the Town is liable only if it acted negligently with respect to Brown's sexual harassment allegations. *See Ocheltree*, 335 F.3d at 333–34.

As a point of clarification, "[n]egligence sets a minimum standard for employer liability under Title VII." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 759 (1998). When the plaintiff alleges sexual harassment by a coworker, courts require the plaintiff to prove the employer's negligence in her suit against the employer. *See Ocheltree*, 335 F.3d at 333–34.

But in this case, Sealock—Brown's alleged harasser—was one member of the six-member town council that employed Brown. He is thus more accurately characterized as her supervisor, rather than her coworker under Title VII.[5] "In cases in which the harasser is a

---

against her; and (3) there was a causal link between the two events." *Fry v. Rand Constr. Corp.*, 964 F.3d 239, 244–45 (4th Cir. 2020) (cleaned up). None of these three claims or their related affirmative defenses contains an element that would place the advice of outside counsel at issue, and therefore the Town has not waived its privilege as to these claims.

[5] "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim . . . ." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). The court makes this distinction for purposes of this Opinion only, without expressly deciding whether Sealock is Brown's supervisor under Title VII—a fact-intensive question not currently before the court. Moreover, the court notes that the Town, in moving for summary judgment on the hostile work environment claim, has raised a threshold argument that the Town is not liable, under Title VII, for acts of

'supervisor' . . . different rules apply. If the supervisor's harassment culminates in a tangible employment action, the employer is strictly liable." *Vance*, 570 U.S. at 424. A "tangible employment action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 429.[6]

But when the supervisor's harassment does not culminate in a tangible employment action, the employer may escape liability by establishing the *Ellerth/Faragher* affirmative defense. *See Ellerth*, 524 U.S. at 765; *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998). The *Ellerth/Faragher* affirmative defense requires an employer to establish "that (1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance*, 570 U.S. at 424.[7]

---

sexual harassment committed by its elected town councilmembers, including Sealock. (*See* Def.'s Br. Supp. Mot. Summ. J. at 10–11 [ECF No. 75].) The court will address that argument in due course.

[6] The Town eventually fired Brown, and she claims that it did so in retaliation for her reporting Sealock's alleged harassment. In *Ray v. International Paper Co.*, the Fourth Circuit also confronted both a hostile work environment claim and a Title VII retaliation claim. 909 F.3d 661, 666 (4th Cir. 2018). The court held that, even though the plaintiff alleged her employer ultimately fired her for *reporting* the harassment, "it is impossible to separate" the employer's motive for firing the plaintiff from the supervisor's harassment. *See id.* at 669. The court found that the record sufficiently demonstrated "some nexus" between the harassment and the tangible employment action taken to invoke strict liability against the Town on the hostile work environment claim. *See id.* at 667–69. The court offers no opinion about whether the logic of *Ray* applies to Brown's case as neither party asserts that the Town should be held strictly liable for Sealock's conduct at this time.

[7] The Town has not expressly raised the *Ellerth/Faragher* affirmative defense in this case, but it has reserved its right to rely on any affirmative defenses that become available. (*See* Ans. ¶ 116.) It is also worth noting that, in her brief in support of the motion to compel, Brown stated her belief that the Town will advance an *Ellerth/Faragher* affirmative defense, but the Town did not confirm or deny its intent to rely on that defense. (*See* Pl.'s Br. Supp. Mot. to Compel at 16 n.6; *see generally* Def.'s Br. Opp. Mot. to Compel [ECF No. 47].)

All of this is to say that the Town's preventive and corrective actions could be dispositive of the Town's liability for Sealock's alleged harassment. From that basic premise, Judge Hoppe concluded that "[Judkins's] investigation and the conclusions drawn therefrom, are part and parcel to the reasonableness of the Town's response to Brown's hostile work environment claim." (Mem. Op. at 11.)

1. **Factual Findings**

The Town contends that Judge Hoppe's factual findings as to Judkins's actual involvement in its investigation were clearly erroneous. Specifically, the Town objects to Judge Hoppe's conclusions that (1) "the Town hired [Judkins] to investigate Brown's complaints and to make sure the investigation was 'done per the law,'" and (2) "[t]he Town relied on [Judkins] and the 'HR Department' to determine whether the investigation showed 'that there was sexual harassment or retaliation or a hostile work environment[.]'" (Mem. Op. at 12 (quoting Tederick Dep. at 110:22–111:1, 114:1–8, 118:1–6).)

The Town argues that "Bush, and Bush alone," conducted the investigation into Brown's complaints. (Def.'s Objections at 5.) Judkins, according to the Town, did not "**ever** participate in the investigation, question witnesses, assemble facts, draw conclusions[,] or construct a remedial response" to Brown's complaints. (*Id.* (emphasis in original).) The Town portrays Judkins's role as merely reviewing the report "to provide legal advice and counsel related to the report which the Town—alone—prepared." (*Id.*)

While this court may very well have reached a different conclusion on this record, Judge Hoppe's factual findings about the extent of Judkins's involvement in the Town's investigation were not clearly erroneous. Tederick testified that the Town hired Judkins "to make sure [the

- 10 -

investigation] was done per the law[,]" "to ensure [Brown] was treated fairly[,]" and to ensure "the investigation was done properly." (Tederick Dep. at 110:22–111:1.) Councilmember Letasha Thompson also testified that Judkins "was retained to make sure that everything was being handled to the letter with [Brown's] case . . . ." (Dep. of Letasha Thompson 217:13–18, Sept. 28, 2021 [ECF No. 46-1].) At one point, Tederick even referred to the Town's investigation as the "investigation that was being conducted by HR and counsel—and legal counsel." (Tederick Dep. at 117:15–16.)

Additionally, Tederick testified repeatedly that "the investigative body"–namely, the "the HR Director, in conjunction with legal counsel"—would have to make the final determination about whether Sealock's behavior constituted sexual harassment under the Town's Personnel Policy.[8] (Tederick Dep. at 113:20–114:8; *see id.* at 128:13–25 ("Yeah, I can't answer whether that's sexual harassment or not."); 138:4–18 ("[I]f it was investigated and determined to fall within this category [of sexual harassment] by both HR department or a supervisor and/or consultation with legal counsel, if they determined that it violated, then I would say yes, it violated.").) And Tederick testified that "[i]f legal counsel and the HR department had concluded that there was sexual harassment or retaliation or a hostile work environment, [he] without doubt, . . . would have encouraged Council to take all the appropriate action afforded to [it] by the law without a doubt." (*Id.* at 118:1–6.)

---

[8] The court notes that Tederick's deposition testimony about Judkins's integral role in the investigation is in tension with counsel's representation that "Bush, and Bush alone," conducted the investigation, and that Judkins did not "ever participate in the investigation, question witnesses, assemble facts, draw conclusions[,] or construct a remedial response[.]" (Def.'s Objections at 5.) Neither the parties nor the magistrate judge questioned Tederick's credibility on this topic, so this court must accept his deposition testimony as true for purposes of analyzing this privilege issue. Additional discovery will reveal which characterization of Judkins's involvement is, in fact, true.

But Tederick also testified that Judkins did not tell the Town how to conduct its investigation or what conclusions to draw from it. (*See id.* at 148:2–19 ("The report was provided to [Judkins] and she offered legal advice and counsel as relates specifically to that document. Not what to say in that document."); 171:7–17 ("Q: Did you rely on the advice that [Judkins] gave in deciding how to go forward . . . [w]ith regard to the investigation report[?] A: No. . . . I was relying on Ms. Bush and Ms. Macintosh to conduct their investigation, per HR policy or to our Personnel Policy.".) And when asked whether she delayed finalizing her investigation until she received input from Judkins, Bush stated "I don't believe so." (Dep. of Julie Bush 162: 12–14, July 6, 2021 [ECF No. 58-1].)

On the whole, the court finds that these statements by Tederick and others support Judge Hoppe's factual conclusions that the Town hired Judkins to investigate Brown's complaints and relied on her conclusions about whether the alleged behavior constituted sexual harassment, such that his conclusions were not clearly erroneous. The record contains sufficient evidence for a judge to conclude the opposite as well. But Tederick's testimony about the integral role of outside counsel in the investigation, considered in conjunction with Thompson's testimony and other evidence in the record, certainly does not leave the court with a "definite and firm conviction that a mistake has been committed." *See TFWS, Inc.*, 572 F.3d at 196. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. Accordingly, for purposes of reviewing the Town's objections, the court accepts Judge Hoppe's factual conclusions and will overrule the objections insofar as it challenges those factual conclusions.

### 2. Legal Conclusions

Based on these permissible factual findings, Judge Hoppe analogized this case to *Chivers v. Central Noble Comm. Schools*, a case that addressed waiver of attorney-client privilege in the context of a Title IX claim. No. 1:04-cv-00394, 2005 WL 6567356, at *1 (N.D. Ind. Aug. 4, 2005). The plaintiff student in that case alleged that her teacher, who worked for the defendant school, sexually harassed and then discriminated against her. *Id.* The plaintiff sought to depose the attorney who provided legal advice to the school during the investigation of plaintiff's allegations, but the defendant invoked attorney-client privilege to prevent the plaintiff from taking the attorney's deposition. *Id.*

The court held that the defendant had waived its attorney-client privilege by placing the attorney's advice at issue during the former superintendent's deposition. *Id.* at *3. Notably, during that deposition, the superintendent testified that he could not say whether the defendant's sexual harassment policy had been violated because he was not an attorney. *Id.* In reaching its holding, the court held that the superintendent had "essentially turned the investigation of [plaintiff's] charges over to [defendant's] attorney," and that the attorney "assembled the facts, drew the conclusions, and constructed the remedial response." *Id.* at *4. Because the reasonableness of the defendant's corrective actions in response to plaintiff's allegations was a critical issue in the case, the court would not permit the defendant to rely on the attorney's advice and actions as a "sword" while also allowing attorney-client privilege to "shield" the nature of those actions from the plaintiff. *Id.*

Judge Hoppe correctly concluded, based on his factual findings, that Brown's case resembles *Chivers*. The magistrate judge found, based largely on Tederick's testimony, that the

Town hired Judkins to investigate Brown's complaints and ensure the investigation was conducted lawfully, and that the Town apparently relied on Judkins (at least in part) to determine if Sealock's behavior constituted sexual harassment or created a hostile work environment. Judge Hoppe therefore correctly reasoned that, as in *Chivers*, the Town's preventative and corrective actions may determine the Town's liability for a hostile work environment claim. Tederick's testimony on behalf of the Town also mirrors the superintendent's in *Chivers* because both individuals testified that the final determination of whether a particular action violated the relevant entity's sexual harassment policy depended on outside counsel's advice. (*See* Tederick Dep. at 118:1–6.) It is worth noting that Tederick repeatedly stated that the Town would rely on the opinion of "legal counsel *and the HR department*[,]" (*see id.* (emphasis added)), rather than exclusively relying on outside counsel. While the *Chivers* defendant's exclusive reliance on its attorney presents a stronger case for finding waiver of attorney-client privilege, the Town relied on Judkins both to conduct its investigation and to reach essential conclusions that bear on the ultimate issue of the Town's liability for Sealock's alleged harassment. That reliance necessarily puts Judkins's advice to the Town at issue.

This finding of waiver is bolstered by other courts assessing hostile work environment claims under Title VII that routinely hold that the *Ellerth/Faragher* affirmative defense waives attorney-client privilege when outside counsel investigates harassment allegations. *See Osucha v. Alden State Bank*, No. 17CV1026V, 2019 WL 6783289, at \*6 (W.D.N.Y. Dec. 12, 2019); *EEOC v. Nabors Indus., Ltd.*, No. 5-16-CV-00758-FB-RBF, 2018 WL 11195496, at \*3–4 (W.D. Tx. Aug. 21, 2018); *Angelone v. Xerox Corp.*, No. 09-CV-6019, 2011 WL 4473534, at \*2–3

(W.D.N.Y. Sept. 26, 2011); *Escamilla v. SMS Holdings Corp.*, No. 09-2120, 2011 WL 13243580, at *19–25 (D. Minn. June 28, 2011). *Cf. Sirois v. E.W. Partners, Inc.*, No. 17-00383, 2018 WL 11237070, at *2–3 (D. Haw. Jan. 8, 2018) ("Although [d]efendant . . . pled [an *Ellerth/Faragher*] defense in its Answer, it has not used an investigation involving [its outside counsel] to support the defense. . . . Moreover, the [c]ourt finds that [p]laintiff has failed to provide factual support for her assertion that [its outside counsel] took part in an investigation.")

The Town finally argues that the magistrate judge's finding of waiver defies Fourth Circuit precedent holding that attorneys serving as part of an "investigative body" does not result in a waiver of privilege. (*See* Def.'s Reply 3 [ECF No. 120] (citing *In re Allen*, 106 F.3d 582, 602–03 (4th Cir. 1997)).) In *Allen* the court considered whether client communications between the defendant and an attorney performing investigatory services were shielded by attorney-client privilege. 106 F.3d at 601–03. The plaintiff argued that "the communications at issue . . . were not made for the purpose of securing legal services." *Id.* at 601. The court rejected that argument and held that where an investigation is "related to the rendition of legal services" the communications surrounding those services are subject to attorney-client privilege. *See id.* at 603. But *Allen* did not involve the more nuanced issue of an attorney investigating a Title VII hostile work environment claim, so this argument misses the mark. Judge Hoppe did not conclude that the Town waived its attorney-client privilege simply because Judkins conducted an internal investigation or provided legal advice related thereto; indeed, if he had, this court would have no trouble holding such a finding contrary to law. Instead, the magistrate judge correctly recognized that the reasonableness of the Town's investigation was part and parcel to Brown's hostile work environment claim, and that the

Town, through Tederick (and others), had expressly put that investigation and Judkins's advice related to it at issue.

The court therefore concludes that Judge Hoppe's finding of waiver under these facts was not contrary to law. The Town must disclose, as Judge Hoppe directed, all communications with Judkins regarding that investigation, Judkins's factual findings and conclusions from the investigation, and her advice about any remedial measures taken in response to Sealock's alleged harassment.

## IV. CONCLUSION

For the above reasons the court will overrule the Town's objections (ECF No. 109) to the Order granting in part and denying in part Brown's motion to compel (ECF No. 97). Brown will be permitted to re-depose Thompson and the Town's designee, and the Town will be required to produce documents related to Judkins's investigation of and involvement in Brown's sexual harassment allegations.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 3rd day of May, 2022.

                                                */s/ Thomas T. Cullen*
                                                HON. THOMAS T. CULLEN
                                                UNITED STATES DISTRICT JUDGE